IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 16-00091-01-CR-W-BCW |
| Clyde McCowan, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the DEFENDANT'S MOTION TO DISMISS INDICTMENT BASED ON POST-INDICTMENT DELAY (Doc. #16) filed on November 27, 2017, by defendant Clyde McCowan ("McCowan"). On April 11, 2018, the undersigned held an evidentiary hearing on McCowan's motion. McCowan was present and was represented by his counsel, David Guastello. The government was represented by Assistant United States Attorney Stephan Hughes. At the evidentiary hearing, McCowan testified on his own behalf, as did Special Agent Steven Lester with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Additionally, the following exhibits were offered by the government and were admitted into evidence:

| Number | Description |
|---|---|
| Gov't #1 | ATF report |
| Gov't #2 | DNA report |
| Gov't #3 | KCMPD report |
| Def't #11 | Summons (Landlord-Tenant Action) |
| Def't #12 | Civil judgment |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

# PROPOSED FINDINGS OF FACT[1]

1. Steven Lester is a Special Agent with Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF"). Tr. at 3.

2. As part of a 2012 investigation, on May 21, 2012, the Kansas City, Missouri Police Department ("KCMPD"), using a confidential informant, purchased a small amount of crack cocaine from the residence at 4818 East 45th Street in Kansas City, Missouri. Tr. at 4.

3. Subsequently, in furtherance of the investigation, the KCMPD executed a search warrant at the 45th Street address on June 6, 2012. Tr. at 4-5.

4. During the execution of the search warrant, officers encountered McCowan at the address, whom they believed to be the occupant of the 45th Street residence. Tr. at 5.

5. The resulting search of the residence located a 9 mm. handgun, 50-55 grams of marijuana, 4-5 grams of crack cocaine, and other contraband. Tr. at 6.

6. McCowan was arrested at the scene of the search. Tr. at 7.

7. At that time, McCowan invoked his *Miranda* rights and refused to talk with officers. Tr. at 7.

8. Subsequently, officers obtained a warrant to obtain a DNA sample from McCowan. Tr. at 8.

9. On June 3, 2013, the Regional Crime Lab made a partial genetic match between McCowan's DNA and DNA recovered from the 9 mm. handgun seized at the 45th Street address. Tr. at 33.

---

[1] After being apprised of his rights, McCowan elected to testify at the evidentiary hearing. McCowan's testimony was largely not relevant to the issue of the efforts being made by Special Agent Lester to locate McCowan. To some extent, however, McCowan's testimony potentially called into question the accuracy of Special Agent Lester's recitation of events. For example, McCowan claims to have regularly called a KCMPD telephone number that would have revealed whether there was an outstanding warrant for McCowan. Assuming, McCowan's warrant information was entered into NCIC as testified to by Special Agent Lester, such calls should have disclosed the outstanding warrant to McCowan. In making these findings, the Court consequently has been required to make some credibility determinations as they pertain to Special Agent Lester's testimony and McCowan's testimony. In making such determinations, the Court considered (1) the demeanor of the witnesses on the stand, (2) the interest the witnesses had in the outcome of the motion, and (3) the opportunity of the witnesses to hear, observe, and recall what was said or done. In the end, the Court concludes that, in general, where there were potential conflicts, Special Agent Lester was a more credible witness.

10. Sometime in June of 2013, the Street Crimes Unit of the KCMPD referred McCowan's case to the ATF. Tr. at 20.

11. On March 10, 2016, Special Agent Lester and federal prosecutors presented evidence to a federal grand jury who returned an indictment against McCowan charging him with being a felon in possession of a firearm. Tr. at 9.

12. Thereafter, an arrest warrant was issued for McCowan. Tr. at 9.

13. On March 11, 2016, the ATF placed McCowan's arrest warrant into the National Crime Information Center ("NCIC"). Tr. at 9.

14. The NCIC is the United States' central database for tracking crime-related information. It is maintained by the Criminal Justice Information Services Division of the Federal Bureau of Investigation and is interlinked with federal, tribal, state, and local agencies and offices. The purpose of the system is to create a centralized information system to facilitate information flow between the numerous law enforcement branches. In addition to outstanding arrest warrants, the NCIC is a repository for numerous other databases such as Missing Persons Files, Foreign Fugitive Files, Identity Theft Files, Protection Order Files, Supervised Release Files, Gang Files, and National Sex Offender Registry Files.

15. On March 12, 2016, Special Agent Lester ran a computer check on McCowan through the KCMPD's Tiburon automated system, which tracks, in part, reports of police contacts with individuals. Tr. at 9-10, 16.

16. On March 12, 2016, Special Agent Lester also searched for McCowan in private databases available to law enforcement entities including TLO and Accurint. Tr. at 9-10.

17. The queries submitted by Special Agent Lester showed that McCowan had utilized the 45th Street address as well as an address at 10919 South Elmwood, Kansas City, Missouri. Tr. at 10.

18. Special Agent Lester then surveilled both locations but did not locate McCowan. Tr. at 10-11, 25-28.

19. On April 21, 2016, Special Agent Lester conducted additional computer checks for McCowan and developed a third address associated with McCowan – 13815 South 71 Highway, Grandview, Missouri. Tr. at 11.

20. On April 21, 2016, Special Agent Lester surveilled all three locations but did not locate McCowan. Tr. at 11, 28.

21. On November 9, 2016, Special Agent Lester performed an ATF fugitive validation for McCowan. Tr. at 12, 30.

22. A fugitive validation is a periodic review by ATF to make sure that outstanding warrant information is still valid and to engage in a check to ensure that an individual had not been otherwise arrested. Tr. at 12.

23. The fugitive validation process also required Special Agent Lester to list the name of the assigned prosecutor, indicate whether the intent was still to prosecute the case, and indicate what surveillance, if any, had been done in attempting to locate an individual. Tr. at 12.

24. On November 9, 2016, Special Agent Lester again surveilled the three locations but did not locate McCowan (although he did leave business cards at the addresses). Tr. at 12-13, 30.

24. In February of 2017, Special Agent Lester again ran McCowan's name through available computer databases. Tr. at 14.

25. In addition, Special Agent Lester checked with Missouri Vital Statistics to make sure that McCowan was not deceased and ran McCowan's Social Security number through Kansas and Missouri databases to see if McCowan was working under his Social Security number. Tr. at 14.

26. In February of 2017, Special Agent Lester again surveilled the three locations but did not locate McCowan. Tr. at 14-15, 30.

27. In May of 2017, Special Agent Lester again ran McCowan's name through available computer databases. Tr. at 15, 30.

28. On June 29, 2017, Special Agent Lester performed another ATF fugitive validation for McCowan as well as surveilling the three locations to no avail. Tr. at 15-16, 31.

29. In addition, in 2017, Special Agent Lester utilized his undercover Facebook persona to search social media platforms for McCowan but found no leads. Tr. at 17.

30. On September 5, 2017, McCowan was stopped for a traffic violation in Grandview, Missouri, and was arrested based on his outstanding arrest warrant. Tr. at 17-18, 31.

**PROPOSED CONCLUSIONS OF LAW**

In his motion, McCowan moves the Court to dismiss this case against him with prejudice based on a violation of the Sixth Amendment. To that end, the Sixth Amendment to the Constitution of the United States provides that in all criminal prosecutions the accused has the right to a speedy trial. U.S. CONST. amend. VI. McCowan claims the government violated this constitutional right by failing to promptly arrest him after the indictment in this case was filed and he was subject to an arrest warrant. *See, e.g.*, *United States v. Sprouts,* 282 F.3d 1037, 1042 (8th Cir. 2002). In general, a criminal defendant who claims an indictment must be dismissed because his speedy trial rights were violated must initially allege and establish "that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States,* 505 U.S. 647, 651-52, 112 S. Ct. 2686, 2690 (1992). Broadly speaking, this threshold is met if the delay between indictment and a defendant's arrest is at least one year. *Id.* at 652 n.1, 112 S. Ct. at 2691 n.1; *United States v. Brown,* 325 F.3d 1032, 1034 (8th Cir. 2003). In this case, the eighteen month delay is sufficient to trigger a conclusion of presumptive prejudice to McCowan. Such a finding, however, does not end the inquiry nor – standing alone – require dismissal of an indictment.

Instead, if a defendant satisfies this threshold showing, a court must conduct the speedy trial analysis first articulated in *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182 (1972), to determine if the presumption of prejudicial delay warrants a dismissal. Under *Barker,* the Sixth Amendment claim is assessed by balancing: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant. *Id.* at 530, 92 S. Ct. at 2192; *United States v. Shepard,* 462 F.3d 847, 864 (8th Cir. 2006). No one factor, taken by itself:

> [is] either a necessary or sufficient condition to the finding of a
> deprivation of the right of speedy trial. Rather, they are related
> factors and must be considered together with such other
> circumstances as may be relevant.

*Barker*, 407 U.S. at 533, 92 S. Ct. at 2193.

### 1. Length of delay

When a defendant has made a showing that post-indictment delay was presumptively prejudicial (as has been done in this case), "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim ." *Doggett,* 505 U.S. at 652, 112 S. Ct. at 2691. The extent of delay is significant because, as noted by the Supreme Court, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.* As already noted, in this case the post-indictment delay exceeded a year. However, this factor alone does not support a claim that McCowan's Sixth Amendment rights were violated. As exemplified by *Barker,* depending on the particular facts of a case, far greater delays than eighteen months have been held to not violate a defendant's speedy trial rights. *See*, *e.g.*, *Barker,* 407 U.S. at 534, 92 S. Ct. at 2194 (holding the defendant's speedy trial rights were not violated although the five-year delay between arrest and trial); *Reynolds v. Leapley,* 52 F.3d 762, 764 (8th Cir. 1995) (holding nine-year post-indictment delay did not violate defendant's speedy trial rights where the defendant fled the jurisdiction to avoid arrest, became incarcerated elsewhere and did not immediately demand a speedy trial). In this case, the Court does not find that an eighteen month post-indictment delay, in and of itself, is "so inordinately lengthy that it requires the severe remedy of an automatic dismissal." *United States v. Richards,* 707 F.2d 995, 997 (8th Cir. 1983). Nonetheless, the delay is still a significant factor to be balanced by the Court.

### 2. Responsibility for delay

The second *Barker* factor requires a determination as to why a delay occurred. For that, "the prosecution bears the burden of explaining delay in bringing an accused to trial." *McNeely v. Blanas,* 336 F.3d 822, 827 (9th Cir. 2003) (collecting cases). Viewing that evidence, a court then must determine if the government "discharge[d] its 'constitutional duty to make a diligent, good-faith effort to bring [the defendant to trial].'" *Moore v. Arizona,* 414 U.S. 25, 26, 94 S. Ct. 188, 190 (1973) (*quoting*, *in part*, *Smith v. Hooey*, 393 U.S. 374, 383, 89 S. Ct. 575, 579 (1969)).

It is axiomatic that a defendant is not permitted to benefit from delay caused by his own conduct. *Richards,* 707 F.2d at 997 (although a 35-month post-indictment delay was presumptively prejudicial, dismissal was improper where the government had tried to locate the defendant, but the defendant was hiding); *United States v. Weber,* 479 F.2d 331, 333 (8th Cir. 1973) (holding that a 21-month post-indictment delay did not weigh against the government where the defendant "purposefully obstruct[ed] justice by becoming a fugitive"). Conversely, however, delay attributable solely to the government necessarily must weigh against the government in the *Barker* balancing. But government delay can result from far differing reasons. Indeed, as the Supreme Court has noted, "speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable." *Doggett*, 505 U.S. at 656, 112 S. Ct. at 2693.

Thus, the reasons for governmental delay may be benign, as when "[t]he government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down." *Id*. On the other hand, delay could be the result of intentional bad faith by the government seeking an unfair prosecutorial advantage. When present, those extremes make the Sixth Amendment analysis easier; but they do not represent the typical post-indictment delay case.

> Between diligent prosecution and bad-faith delay, official
> negligence in bringing an accused to trial occupies the middle
> ground. While not compelling relief in every case where bad-faith
> delay would make relief virtually automatic, neither is negligence
> automatically tolerable simply because the accused cannot
> demonstrate exactly how it has prejudiced him.

*Doggett*, 505 U.S. at 656-57, 112 S. Ct. at 2693.

In this case, there is no evidence that the government engaged in bad-faith or intentional misconduct in failing to timely seek an arrest of McCowan following his indictment. On the record evidence presented to the Court, <u>at worst</u>, Special Agent Lester was less than diligent in seeking out McCowan. Given the efforts undertaken by Special Agent Lester, and recognizing that he had job responsibilities other than finding McCowan, the Court is reluctant to even characterize the government's efforts as "negligent."[2] But, even if such a designation is appropriate, under *Barker*:

> The government's intentional delay in locating a defendant will
> weigh heavily against it. . . . Negligence, on the other hand, will be
> weighted less heavily against the government but is still a
> considerable factor in the weighing process.

*United States v. Walker,* 92 F.3d 714 717 (8th Cir. 1996) (*citing Barker,* 407 U.S. at 531, 92 S. Ct. at 2192).

---

[2] In arguing that the government did not exercise due care in locating him, McCowan notes that he was sued by his landlord for non-payment of rent in Jackson County Circuit Court in the Summer of 2016. The court docket shows that the landlord successfully served McCowan at his then-address [6310 East Red Bridge Rd., Kansas City] on July 28, 2016. The fact that McCowan's landlord knew of his whereabouts, however, is hardly "common knowledge" that should be imputed to law enforcement. It is also worth noting, moreover, that McCowan was sued by another landlord for unpaid rent in Jackson County in May of 2016. The court docket for that case shows that the landlord successfully served McCowan at his then-address [10919 Elmwood Dr., Kansas City] on May 28, 2016. To the extent that Special Agent Lester's search attempts should have included a search of Missouri civil case dockets, a case for negligence (albeit a slight one) can be made.

### 3. Assertion of speedy trial rights

A defendant's timely assertion of his right to a speedy trial, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker,* 407 U.S. at 531-32, 92 S. Ct. at 2192-93. However, a defendant cannot invoke his right to a speedy trial until he knows criminal charges have been filed against him. Consequently, where a defendant is unaware of the existence of an indictment, he cannot "be taxed for invoking his speedy trial right only after his arrest." *Doggett,* 505 U.S. at 654, 112 S. Ct. at 2692. Based on the evidence presented, there is no basis for finding evidence McCowan knew or should have known of the federal indictment handed down against him. As a result, his failure to invoke his right to a speedy trial after the indictment and before his arrest does not weigh against McCowan under *Barker.*

### 4. Prejudice to McCowan from the delay

The fourth *Barker* factor turns on whether the defendant was prejudiced by the government's post-indictment delay in securing his arrest. *United States v. Shepard,* 462 F.3d 847 864 (8th Cir. 2006). This factor is "evaluated 'in the light of the interests of defendants which the speedy trial right was designed to protect . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired . . . the most serious is the last.'" *Shepard,* 462 F.3d at 864 (*quoting Barker,* 407 U.S. at 532, 92 S. Ct. at 2193). In this case, only the third interest seems pertinent.[3]

---

[3] McCowan testified that he was anxious about the possibility of an arrest warrant being issued for him and that he "regularly" called a hotline number to inquire about the existence of a warrant. Even assuming such calls were made, the fact that McCowan supposedly learned each time that there no arrest warrant him should not have increased his anxiety.

A criminal defendant can substantially advance the case for a Sixth Amendment violation by presenting evidence of actual prejudice – *e.g.,* deceased witnesses, destroyed evidence. In this case, McCowan does not offer such evidence of actual prejudice. Instead, McCowan – citing *Doggett* – argues that "prejudice can be presumed" in this case.

In *Doggett*, all of the *Barker* factors leading up to the prejudice analysis weighed in favor of the defendant. Nonetheless, the government asserted there was no Sixth Amendment violation because the defendant had "failed to make any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2692. The Court agreed that the defendant "c[a]me up short in this respect." *Id*. However, the Court went on to note:

> *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.

*Id*. at 655, 112 S. Ct. at 2692-93 (*internal punctuation and citations omitted*).

Consequently, the *Doggett* court concluded that prejudice may be presumed "albeit unspecified" if the other *Barker* factors support a speedy trial violation unless there is evidence of "the defendant's acquiescence"[4] or the government "persuasively rebut[s]" the presumption. *Id*. at 658, 112 S. Ct. at 2694. In this case, however, the Court does not view the other *Barker* factors as creating an "amplified presumption of prejudice" or even as weighing decidedly in favor of McCowan.

---

[4] The Court appeared to be referring to instances wherein a criminal defendant proceeded to enter a guilty plea notwithstanding a potential speedy trial violation.

There is case law to support a conclusion that McCowan's failure to adduce evidence of actual prejudice dooms his motion to dismiss. For instance, in *United States v. Brown*, 325 F.3d 1032 (8th Cir. 2003), the Eighth Circuit concluded that the defendant bore a "burden to show the delay actually prejudiced him." *Id*. at 1035. In *Brown* and the case cited in its opinion, *United States v. Walker,* 92 F.3d 714, 716-17 (8th Cir.1996), the criminal defendant had *Barker* balancing factors weighing against him. *See*, *e.g.*, *Brown*, 325 F.3d at 1035 ("Because [the defendant] did not contact the U.S. Attorney or the district court to inquire about his case or his request for a speedy trial [after receiving a detainer while incarcerated on other charges], the third factor weighs against [the defendant]."); *Walker*, 92 F.3d at 719 (defendant knew of criminal charges and became a fugitive). Such a factor seemed critical to the Eighth Circuit in requiring evidence of actual prejudice:

> Considering the length and reason for the delay and [the defendant's] lack of diligence in asserting his rights, we cannot say [the defendant] was relieved of his burden to show the delay actually prejudiced him. . . .

*Brown*, 325 F.3d at 1035.

In this case, the Court does not find that McCowan was relieved of his burden to show the eighteen month post-indictment delay actually prejudices his Sixth Amendment rights. Inasmuch as McCowan has come forward with no evidence, he has failed to meet this burden.

Moreover, even if under these facts prejudice may be presumed "albeit unspecified," the Court finds that the government has "persuasively rebut[ted]" any presumption. *Doggett*, 505 U.S. at 658, 112 S. Ct. at 2694. The government offered specific evidence that the seized gun, crack cocaine, digital scale and other contraband are still located in the KCMPD evidence room as is the DNA swab obtained from the gun.

Accordingly, it is

11

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Defendant's Motion to Dismiss Indictment Based on Post-Indictment Delay (Doc. #16) filed on November 27, 2017, by defendant Clyde McCowan.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                              */s/ John T. Maughmer*
                                                **John T. Maughmer**
                                      **United States Magistrate Judge**